(C. D. 748)

ABSORBO BEER PAD CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 15, 1943)

*William Whynman* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

KINCHELOE, Judge: This suit involves the dutiable classification of certain pulpboard, which was assessed for duty at 30 per centum ad valorem under paragraph 1413 of the Tariff Act of 1930, as being embossed or decorated, and which is claimed to be pulpboard not embossed, decorated, or ornamented in any manner, dutiable at only 10 per centum ad valorem under paragraph 1402 of said act.

The merchandise in question is represented by the official samples marked in evidence as collective exhibit 1.

At the commencement of the trial it was stipulated between the attorneys on both sides that the merchandise under consideration is "not plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined."

Benjaman J. Goldstein appeared as a witness for the plaintiff. He stated that he is president of the Absorbo Beer Pad Co., Inc., and that they have been in that business 10 years; that he purchases the raw material and sells the manufactured product; that he has traveled here and abroad in purchasing wood pulp at the mills; that he has seen similar merchandise manufactured in several places, among which were the Osthushendrich-Werke in Germany, the Ruhmann place in Austria, etc.

The witness stated that he is the Mr. Goldstein who testified in the recent case of *Absorbo Beer Pad Co., Inc.* v. *United States,* decided as C. A. D. 209 (30 C. C. P. A. 24), involving the same character of pin-prick pulpboard. After looking at collective exhibit 1 in this case and

exhibit 1 in said C. A. D. 209, he stated that the samples in both instances were substantially similar and were made out of the same class of material.

On motion of counsel for the plaintiff the record in said C. A. D. 209 was incorporated as a part of the record herein, over the objection of Government counsel that it was not shown that the process of manufacture was the same in both cases.

The witness testified further that the merchandise in the present case was made by Adolf Ruhmann, and that he was in Ruhmann's factory in 1934, and that Ruhmann's method of manufacture was different from that described in said C. A. D. 209. Upon being shown exhibits 1 and 2 in protest 872187–G, the subject of C. D. 32, which was another suit by the same plaintiff, the witness stated that that merchandise was made by the same manufacturer as in the present instance, and that the merchandise is substantially similar in all material respects. Whereupon, on motion of counsel for plaintiff, the record in said C. D. 32 was also incorporated as a part of the record herein.

The witness then described the process of manufacture that he observed in the Ruhmann factory, as follows:

The logs are cut and put into a grinder. The logs are shredded in this grinder. Water is added to it. The mass—the pulp mass—then flows to a beater. From the beater this pulp mass goes to a tank, and the pulp mass is then picked up by felt rollers that are revolving around, and they gradually pick up this felt until there is sufficient pulp on the felt, and then it goes through rollers. When the pulp mass is compressed and some of the water is taken out, then the sheets, long sheets of this pulpboard are then taken off the machine, cut off, and placed in a separate place. There they take a wire screen, place it on top of this large piece of pulpboard, another sheet, another layer of wire screen, and so on, until a certain pile is reached. Then they compress all those sheets. The water is extracted and the result is you get this sheet. Then you have the sheet as we have it here (showing) on this basis. * * * (R. 13/14).

The witness then continued that that was the way he saw the merchandise made, and that in his opinion from an inspection of the instant merchandise it was made by the process just described. Also that when the pulpboard comes off the machine the sheet is still wet, and that the reason they use the screens is to press out the water, although some of the water is already pressed out after the pulpboard has been compressed by the rollers on the machine. Further, that the sheets of pulpboard are compressed between the wire screens, as described, directly as they come from the board machine. (R. 18/19.)

In said C. A. D. 209 the pinprick pulpboard had also been assessed under said paragraph 1413, as being embossed or decorated. The pinprick markings on both surfaces were shown to be caused by the use of wire screens on the machine during the process of manufacture, and in one operation.

As the pinprick effect on the pulpboard in the instant case is shown to have been produced by some additional operation of pressing the pulpboard between wire screens after it has already been produced on the machine with the rollers, the Government now makes the contention that the merchandise constitutes such pulpboard as Congress intended to assess with a 30 per centum rate of duty under said paragraph 1413, as being more highly processed than the plain pulpboard provided for in said paragraph 1402.

In said C. A. D. 209, the appellate court in reversing the majority decision of this division published as C. D. 580, and in holding the pinprick pulpboard in that case not to be embossed, decorated, or ornamented in any manner, used the following language:

\* \* \*. We think the processes which Congress had in mind in the enactment of paragraph 1413 involve greater embellishment than characterizes the instant merchandise. It is clear to us that while the instant merchandise may be said, in one sense, to have been given raised or depressed effects, the process has not resulted in such embossing or decoration or ornamentation as Congress had in mind. No additional labor was required and, as far as this record shows, no more elaborate processing took place in the manufacture of the instant board than if it had a plain surface. . Therefore, the reason which would ordinarily be attributed to Congress for providing a higher rate of duty for highly processed board than for plain board does not maintain in the present instance.

We think an anomalous result would follow from assessing the instant merchandise with a 30 per centum ad valorem duty and assessing what the Government regards as plain pulpboard with a 10 per centum ad valorem duty. \* \* \* .

\* \* \* \* \* \* \*

\* \* \*. From any observation of the instant imported goods, close or casual, it does not appear to the eye of the observer that the pulpboard has been either embossed, or decorated or ornamented, in the sense in which Congress obviously employed those terms.

Under the foregoing language of the appellate court we do not think the fact that the pinprick markings on the present pulpboard which were produced as the result of pressing the pulpboard between wire screens in a separate operation, to press out the water, instead of by one operation on a board machine with screen wires attached, would make such difference in manufacture as to call for any distinction in the classification of the merchandise. Furthermore, irrespective of the manner in which the so-called pinprick markings may have been produced, the appellate court did not think the pulpboard rose to the dignity of embossed goods, nor that they were decorated or ornamented within the meaning of the terms employed by Congress. Moreover, the appellate court arrived at its conclusion notwithstanding that Joseph M. Greenberger, general manager of said Absorbo Beer Pad Co., testified in the incorporated case (T. D. 49112) in said C. A. D. 209, that the pinprick board therein had been ordered as such, and that the price thereof was higher than for the plain pulpboard; and Leo Weiss testified in said C. A. D. 209 that the wire screen machines on which the pinprick pulpboard was made were "very expensive."

In our opinion, the difference in the manufacture of the pulpboard in said C. A. D. 209 and that now under consideration, would therefore seem to be immaterial, and as the record in the instant and the incorporated cases, and a comparison of the exhibits therein, show that the character of the pulpboard is otherwise the same in all material respects as that in said C. A. D. 209, the claim of the plaintiff for classification of the merchandise as pulpboard, not embossed, decorated, or ornamented in any manner, etc., under paragraph 1402 of said act of 1930, at 10 per centum ad valorem is sustained.

Judgment will be rendered accordingly.